UNITED STATES DISTRICT COURT
Southern District of Florida

| | |
|---|---|
| SAVANNA CLUB WORSHIP SERVICE, INC., STUART SILVESTER, GLEN CLIFTON, JAMES TOBIAS, BARBARA AVERY, and JACK BERGER,<br><br>Plaintiffs,<br><br>v.<br><br>SAVANNA CLUB HOMEOWNERS' ASSOCIATION, INC.; WILLIAM ALSFELD, corporately and individually; KATHERINE THORNTON, corporately and individually; JOEL JEFFREY, corporately and individually; RICHARD PAUL, corporately and Individually; ROBERT BLATZ, corporately,<br><br>Defendants. | CIV-MIDDLEBROOKS<br><br>MAGISTRATE JUDGE LYNCH<br><br>CASE NO.<br><br>FILED by _____ D.C.<br>DEC 0 7 2004<br>CLARENCE MADDOX<br>CLERK U.S. DIST. CT.<br>S.D. OF FLA. - FT. PIERCE<br><br>JURY DEMAND |

## COMPLAINT

NOW COME Plaintiffs, SAVANNA CLUB WORSHIP SERVICE, INC., STUART SILVESTER, GLEN CLIFTON, JAMES TOBIAS, BARBARA AVERY, and JACK BERGER (collectively "Plaintiffs"), by and through their attorneys, Gibbs Law Firm, P.A., and for a cause of action against the Defendants, alleges and shows to the court as follows:

### JURISDICTION AND VENUE

1.  This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343(3)(4) and 42 U.S.C. §§ 3613(c)(1), which confer original jurisdiction on

1



deferral district courts in suits to reduce the deprivation of rights, privileges, and immunities secured by federal law, particularly the Fair Housing Act.

2. The Court has jurisdiction over the request for declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

3. Plaintiffs also assert a Florida state law claim, violation of the Florida Fair Housing Act and violations of a homeowners' association's bylaws. These claim have a common nucleus of operative fact with the Plaintiff's federal claims and this court has jurisdiction over it under 28 U.S.C. § 1367.

4. Venue is proper in this District because the acts complained of occurred in this District pursuant to 28 U.S.C. § 1391(b).

## DESCRIPTION OF PARTIES

### Plaintiffs

5. Savanna Club Worship Service, Inc. (hereinafter "Worship Service") is a nonprofit corporation organized under the law of the State of Florida. The Worship Service is organized by residents of Savanna Club Home Owners Association, Inc. (hereinafter "Savanna Club HOA" or "HOA") to provide religious worship for other residents of the community.

6. In January 2001, Stuart Silvester organized the group of residents in now known as the Worship Service. He lives at Savanna Club HOA during the winter months and leads the Bible study during the Worship Service.

7. Glen Clifton is a Savanna Club HOA resident. He attends the Worship Service year round, and he leads the Bible study during the summer months when Mr. Silvester is at his summer home.

8. James Tobias is a Savanna Club HOA resident. He serves as president of the Worship Service. He is responsible for reserving space in the common areas of Savanna Club HOA for the Worship Service to meet and for setting up the chairs and songbooks for the Worship Service.

9. Barbara Avery is a resident of the HOA. She and her husband purchased property in the HOA in 2003 in large part because the HOA sales representative told them that the Worship Service was one of the activities available to residents.

10. Jack Berger is a resident of the HOA. He is a retired Ohio judge, and he serves as Registered Agent for the Worship Service.

**Defendants**

11. Savanna Club Homeowners' Association, Inc. is a nonprofit corporation organized under the laws of the State of Florida. The HOA passed an amendment to its bylaws in July 2004 banning all religious services from the common areas of the HOA.

12. William Alsfeld is the President of the HOA and a member of the Board of Directors of Savanna Club HOA. Mr. Alsfeld voted to amend the HOA Bylaws in July 2004 to ban all religious services from the common areas of the HOA. On December 5, 2004, Mr. Alsfeld participated in enforcing the ban of religious services against Plaintiffs. Mr. Alsfeld is sued both in his corporate and individual capacity.

13. Katherine Thornton is a member of the Board of Directors of Savanna Club HOA. Mrs. Thornton voted to amend the HOA Bylaws in July 2004 to ban all religious services from the common areas of the HOA. Mrs. Thornton is sued both in her corporate and individual capacity.

14. Joel Jeffrey is a member of the Board of Directors of Savanna Club HOA. Mr. Jeffrey voted to amend the HOA Bylaws in July 2004 to ban all religious services from the common areas of the HOA. On December 5, 2004, Mr. Jeffrey participated in enforcing the ban of religious services against Plaintiffs. Mr. Jeffrey is sued both in his corporate and individual capacity.

15. Richard Paul is a member of the Board of Directors of Savanna Club HOA. Mr. Paul voted to amend the HOA Bylaws in July 2004 to ban all religious services from the common areas of the HOA. On December 5, 2004, Mr. Paul participated in enforcing the ban of religious services against Plaintiffs. Mr. Paul is sued both in his corporate and individual capacity.

16. Robert Blatz is a member of the Board of Directors of Savanna Club HOA, he also serves as President and Chief Operating Officer of American Land Lease (developer of the Savanna Club community). Mr. Blatz abstained from the vote to amend the HOA Bylaws in July 2004 to ban all religious services from the common areas of the HOA. Mr. Blatz is sued in his corporate capacity only.

## STATEMENT OF FACTS

17. At all times relevant to this Complaint, Savanna Club HOA was a Florida homeowners' association that has permitted HOA residents to form clubs and use the HOA common areas for their meetings. In or around March 2000, Stuart Silvester met with Carol Heintz, the business manager of the HOA, to discuss whether he could rent the Fairways Clubhouse to start holding religious services in January 2001 for other HOA residents who desired to attend. Ms. Heintz told Mr. Silvester that, because he was a resident and property owner in the HOA, he could use the common facilities for religious

services, and he would not have to pay rent because other clubs were not required to pay rent.

18. Mr. Silvester was initially given permission to hold religious services in the common areas on Sunday mornings from 9:00 a.m. to 10:00 a.m. beginning January 7, 2001, until the end of April 2001.

19. Because the worship service grew from about 25 attendees in January 2001 to about 100 attendees in April 2001, James Tobias, a worship service attendee, asked for, and was given, permission to continue the meetings throughout the summer months. Pastors from the Boca Raton area began giving the Bible studies when Mr. Silvester left the HOA for the summer. During the summers of 2002 to 2004, Glen Clifton gave the Bible studies while Mr. Silvester was in Canada.

20. From January 2001 until December 5, 2004, the Worship Service has used the HOA common areas on the following basis: James Tobias would reserve the Fairways Clubhouse from 9:00 a.m. to 10:00 a.m., except for about five Sundays per year when the Fairways was reserved by Gwen Worrick, the Director of the Social Committee. During these approximately five Sundays per year, the Worship Service would meet in the Cove, a smaller common building in the HOA.

21. In or around September 2002, Savanna Club HOA adopted a new amendment to their bylaws, establishing rules for the common areas of the HOA. This was the first time in HOA history that any club was required to apply for approval from the HOA Board in order to have a club. The Worship Service submitted an application/charter that stated the purpose of the club, membership requirements, financial issues, and the current officers. The "Statement of basic principles" clearly

states that one of the club's purposes is "[t]o provide a place to worship." The HOA Board approved this application/charter in its December 12, 2002, meeting.

22. On or about December 20, 2002, James Tobias filed Articles of Incorporation to incorporate the worship service as Savanna Club Church, Inc. The incorporation became effective on January 1, 2003.

23. In late 2003 or early 2004, the Worship Service became aware that certain Board members took issue with the group incorporating and having the word "church" in its corporate name. On or about February 5, 2004, James Tobias, President of the Worship Service, met with Joel Jeffrey, an HOA Board member. They executed an agreement whereby the Worship Service would change its name to remove the word "church," and the HOA would "continue to allow the Worship Service to use the Savanna Club Facilities for their weekly Worship Service and their monthly socials" (hereinafter "the Agreement").

24. On or about February 6, 2004, Robert Blatz, President and Chief Operating Officer of American Land Lease (the developer of the Savanna Club community), stated by letter to Glen Clifton, a Worship Service Bible teacher, "that there need not be an agreement, as the church/worship service would perform and be treated within the community as any other club, and no other club is subject to a separate agreement."

25. Although the Worship Service had been promised equal treatment, they endeavored to ensure their continued use of the common areas by fulfilling the requirement of the Agreement. Thus, the Worship Service filed Articles of Amendment on March 3, 2004, removing the word "church" from its name. In addition, the Worship

Service submitted a new charter to the Board for approval in February 2004. Despite the Agreement, the Board did not place the charter approval on the agenda; however, the Board continued to allow the Worship Service to meet as it had since January 2001.

26.  On or about July 8, 2004, the HOA Board voted to amend the HOA Bylaws to ban religious services from the common areas, which was to become effective August 14, 2004. Between July and September 2004, one hundred and eighteen attendees of the Worship Service responded to the ban by filing complaints with the United States Department of Housing and Urban Development.

27.  The Worship Service, in an effort to maintain the status quo while HUD investigated the complaints, continued to meet in the common areas of Savanna Club HOA just as they had since January 2001.

28.  On December 5, 2004, Mr. Tobias, Mr. Silvester, Mr. Clifton, and several other Worship Service attendees arrived at the Fairways Clubhouse about 8:15 a.m. Their custom is to begin setting up chairs for the Worship Service between 8:00 and 8:30 a.m. each Sunday.

29.  The Worship Service attendees were met in the Fairways Clubhouse by HOA Board members William Alsfeld, Joel Jeffrey, and Richard Paul. These Board members denied the Worship Service attendees from meeting in the Fairways Clubhouse. The Board initially said that the Fairways was reserved for a Christmas pageant that was planned to begin at 3:00 p.m. Mr. Tobias stated that the Worship Service had reserved the Fairways Clubhouse for every Sunday morning in 2004, except a few Sundays listed on a memorandum from Gwen Worrick. December 5, 2004, was not listed as a Sunday not reserved for the Worship Group.

30. Mr. Jeffrey then stated that the Worship Service was being denied use of the common areas because they were a religious service and, pursuant to the Boards' July amendment, no religious services were allowed in the common areas of the HOA. According to Mr. Jeffrey, the July amendment invalidated the Worship Service's reservation of the Fairways.

31. In addition, the Board prohibited the Worship Service from meeting in the Cove, where they traditionally met when the Fairways was otherwise being used. The Board claimed that the Cove was being used for a breakfast for the cast of the Christmas pageant. Normally, the group conducting a program in the Fairways would not also be able to reserve the Cove, especially when another group had reserved one of the common buildings. Furthermore, Worship Service attendees who were also cast members in the Christmas pageant were not invited to attend the breakfast, and many who did attend the breakfast were not cast members.

32. Several minutes later, Glen Clifton asked Board members Joel Jeffrey and Richard Paul if the Worship Service could meet outside on the grass. Both men again reiterated the Board's position that no religious services were allowed in the common areas, including the grass outside the buildings.

33. Because the Board prohibited the Worship Service from meeting in the common areas, the Worship Service was unable to conduct its regularly scheduled meeting. About 9:00 a.m. on December 5, 2004, Mr. Tobias explained to the Worship Service attendees that they had be prohibited from using the common areas.

34. Barbara Avery purchased property in the HOA in 2002 because the sales representative told her and her husband that the Worship Service was on of the activities

available to the residents on a weekly basis. Upon information and belief, many other current residents purchased property in Savanna Club HOA based on the representations from the sales office that the Worship Service was offered to residents.

35. In addition, Barbara Avery has taught a Bible study in the Eagle's Landing Clubhouse since approximately July 2003, just shortly after she moved to the HOA. On or about November 29, 2004, Mr. Jeffrey confronted her and stated that she would not be allowed to conduct her Bible study as of December 6, 2004. His stated reason was that the Media Room, where she conducts the Bible study, would be used for Monday Night Football. However, Monday Night Football does not begin until 9:00 p.m., and her Bible study was over by 8:00 p.m.

36. On or about November 30, 2004, Suzanne Earles, HOA administrative assistant in charge of records and reservations for the common areas, informed Mrs. Avery that she was not allowed to reserve the Fairways Clubhouse in her own name for a nonreligious social because of her "affiliation" to "the situation" with the Worship Service.

## COUNT ONE:

## PRELIMINARY AND PERMANENT INJUNCTION

### (All Defendants)

37. Plaintiffs hereby incorporate paragraphs 1 through 36 of this Complaint as though fully set forth herein.

38. Savanna Club HOA's prohibiting the Worship Service from meeting in the common areas of the HOA violates the Plaintiffs' rights under the Federal Fair Housing Act, the Florida Fair Housing Act, and the HOA Bylaws.

9

39. An actual controversy and dispute exists between the parties hereto, which requires this Court to decide the issues presented. Defendants, as of December 5, 2004, have prohibited the Worship Service and its attendees from using the HOA common areas for religious services.

40. Unless enjoined and restrained by this Court, Plaintiffs' state and federal rights to have religious meetings on the same basis as any other club in the HOA will continue to be violated.

41. Unless Defendants are enjoined and restrained from enforcing their ban on religious services in the common areas of the HOA, the Plaintiffs will continue to suffer irreparable injury.

42. Wherefore, Plaintiffs pray for relief against Defendants as hereinafter set forth in the prayer for relief.

## COUNT TWO:

## VIOLATION OF THE FEDERAL FAIR HOUSING ACT

### (All Defendants)

43. Plaintiffs hereby incorporates paragraphs 1 through 36 of this Complaint as though fully set forth herein.

44. Plaintiffs allege that Defendants are discriminating against them in the "provision of services or facilities in connection" with the "terms, conditions, or privileges of the sale or rental of a dwelling" under the Federal Fair Housing Act.

45. The Worship Service and its attendees are protected from disparate treatment on the basis of religion. The HOA has specifically banned religious services

from the common areas while allowing other classes of residents to use the common areas.

## COUNT THREE:

## VIOLATION OF THE FLORIDA FAIR HOUSING ACT

### (All Defendants)

46. Plaintiffs hereby incorporates paragraphs 1 through 36 of this Complaint as though fully set forth herein.

47. Plaintiffs allege that Defendants are discriminating against them in the "provision of services or facilities in connection" with the "terms, conditions, or privileges of the sale or rental of a dwelling" under the Florida Fair Housing Act.

48. The Worship Service and its attendees are protected from disparate treatment on the basis of religion. The HOA has specifically banned religious services from the common areas while allowing other classes of residents to use the common areas.

## COUNT FOUR:

## VIOLATION OF THE SAVANNA CLUB HOA BYLAWS

### (All Defendants)

49. Plaintiffs hereby incorporate paragraphs 1 through 36 of this Complaint as though fully set forth herein.

50. The HOA Board is required to follow the HOA Bylaws. The HOA Bylaws prohibit discrimination against any class of residents in the HOA.

51. The HOA has specifically banned religious services from the common areas while allowing other classes of residents to use the common areas.

## COUNT FIVE:

## DECLARATORY RELIEF

### (All Defendants)

52. Plaintiffs hereby incorporate paragraphs 1 through 51 of this Complaint as though fully set forth herein.

53. Plaintiffs contend that Defendants' ban of religious services in the common areas of the HOA is invalid and unenforceable as applied to the Worship Service, in that it violates the Federal Fair House Act, the Florida Fair Housing Act, and the HOA Bylaws. Specifically, Plaintiffs contend that the ban on religious services violates the law as outlined above, and Plaintiffs are entitled to have the ban eliminated.

54. Plaintiffs further allege that the ban on religious services is invalid on its face.

55. An actual controversy exists between Plaintiffs and Defendants regarding Plaintiffs right to continue meeting in the HOA common areas as other clubs are allowed. Plaintiffs request a declaration as to the validity of the ban on religious services as it is applied to the Worship Services Sunday morning meetings. A judicial declaration is necessary and appropriate at this time because the HOA has now enforced the ban on religious services against Plaintiffs.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray the Court for the following:

A. That the Court grant a restraining order prohibiting Defendants, both corporately and individually, from further enforcing the ban on religious services, until a hearing on a temporary injunction can be heard;

B. That the Court grant a preliminary injunction prohibiting Defendants, both corporately and individually, from enforcing the ban on religious services;

C. That the Court grant a permanent injunction prohibiting Defendants, both corporately and individually, from enforcing the ban on religious services;

D. That the Court declare the respective rights and duties of the parties relative to the ban on religious services on the HOA common areas;

E. That the Court declare the ban on religious services in the common areas of the HOA void as applied to Plaintiffs;

F. That the Court declare the ban on religious services in the common areas of the HOA void on its face;

G. That the Court grant attorneys fees and costs incurred in bringing this action pursuant to 42 U.S.C. § 3613(c)(2);

H. That the Court grant any compensatory damages suffered by Plaintiffs;

I. That the Court grant punitive damages; and

J. That the Court grant any further and equitable relief the court may deem just and proper.

Respectfully submitted this Seventh day of December, 2004,

*David C. Gibbs III*

David C. Gibbs, III (Fla. Bar No. 0992062)
Attorneys for Plaintiffs
Gibbs Law Firm, P.A.
5666 Seminole Blvd., Suite 2
Seminole, FL 33772
Telephone: (727) 399-8300
Facsimile: (727) 398-3907
dgibbs@gibbsfirm.com

JS 44 (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Savanna Club Worship Service, Inc., Stuart Silvester, Glen Clifton, James Tobias, Barbara Avery, and Jack Berger

## DEFENDANTS
Savanna Club Homeowners' Association, Inc., William Alsfled, Katherine Thomson, Joel Jeffrey, Lionel dePaul, and Robert Ritzel

**CIV-MIDDLEBROOKS**

(b) County of Residence of First Listed Plaintiff: **St. Lucie**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed: 
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**LYNCH**

FILED by _____ D.C.
DEC 07 2004
CLARENCE MADDOX
CLERK U.S. DIST. CT.

(c) Attorney's (Firm Name, Address, and Telephone Number)
David C. Gibbs III, Gibbs Law Firm, P.A.
5666 Seminole Blvd. Ste. 2
Seminole, FL 33772
(727) 399-8300

Attorneys (If Known)
Daniel Rosenbaum
500 Australian Ave. S. 9th Fl.
West Palm Beach, FL 33401
(561) 655-5444

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question (U.S. Government Not a Party)
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐1 | ☐1 | Incorporated or Principal Place of Business In This State | ☐4 | ☐4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Principal of Business In Another State | ☐5 | ☐5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury—Med. Malpractice | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 365 Personal Injury—Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine / **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability / ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | ☐ 690 Other | ☐ 840 Trademark | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| | | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| | | | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 220 Foreclosure | ☐ 442 Employment | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| ☐ 230 Rent Lease & Ejectment | [x] 443 Housing/Accommodations / **Habeas Corpus:** ☐ 530 General | ☐ 790 Other Labor Litigation | | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 444 Welfare / ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights / ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. Security Act | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | / ☐ 550 Civil Rights | | | |
| | / ☐ 555 Prison Condition | | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
(Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

42 U.S.C. 3601 et. seq. Plaintiffs are being denied a benefit of housing on the basis of their religion.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION DEMAND UNDER F.R.C.P. 23

CHECK YES only if demanded in complaint:
JURY DEMAND: [x] Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____
DOCKET NUMBER _____

DATE _____
SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**
RECEIPT # 221628  AMOUNT $150.00  APPLYING IFP _____  JUDGE Middlebrooks  MAG. JUDGE Lynch

2:2004CV14345 3C41